[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the husband seeks a dissolution of the parties' thirty-two year marriage after approximately eighteen years of separation. There are no minor children of the marriage. The parties appeared and testified, and documentary evidence was introduced. The parties submitted written proposed orders. After the conclusion of the trial and argument by counsel, the court granted the plaintiff's Motion to Admit Exhibit and Re-Open Testimony on Limited Issue of Life Insurance, and the plaintiff submitted additional evidence. The court observed the demeanor of CT Page 5609 the parties and evaluated their credibility. The court makes the following findings of fact.
The parties were married on June 5, 1965 and had three children. They separated in 1980, not long after the birth of their youngest child, and have lived apart since. The husband has had two separate longstanding relationships with women since then.[1] The first of his affairs began in 1977, twelve years after the marriage and three years before the separation. That relationship lasted seven years. Prior to the separation, the parties argued over the husband's relationships with women (which were not limited to the longstanding relationships alone) and his gambling. The cause of the breakdown of the marriage was the husband's gambling and womanizing. At the time of the separation, he owned a club in East Hartford which featured so-called adult entertainment. When that was closed in 1991 after the liquor license was revoked, he opened a restaurant called Sorrento's in Hartford's south end. The property where the former club had operated was rented to another individual who operates a nightclub there.
The parties have several significant assets. First, the wife owns a home at 146 Partridge Drive, Rocky Hill. It was purchased jointly by the parties in 1984 subject to a mortgage to the Bank of Hartford.[2] The husband quit claimed the house to the wife in 1985, subject to the mortgage and taxes. He never resided in the house. Its value is $150,000.00, and the equity is $63,788.00. Secondly, the parties own two parcels of land in East Hartford presently rented for a nightclub at a monthly rent of $3,200.00. The parties executed deeds granting the parcels to themselves as trustees for their children, but the parties acknowledge that no trust exists, and the court finds that the parties remain fee owners of the property. See, ConnecticutGeneral Statutes, Section 47-20. The parcels were purchased for a total of $222,000.00, and have not been encumbered by mortgages since 1991. The wife values the property at $500,000.00, while the husband thinks it is worth about $275,000.00. The court finds the value to be $500,000.00. Thirdly, the husband owns RDK Associates, Inc., the corporation which operates his restaurant, Sorrento's. He values the restaurant at $75,000.00, less $69,100.00 owed to the West Hartford Credit Union. Although the husband attributes the entire amount of the $69,100.00 debt to the business, $30,000.00 of the West Hartford Credit Union loan was used to pay for his daughter's wedding. Accordingly, the court finds that the restaurant business is worth CT Page 5610 $35,900.00.[3] In addition to these assets, the husband once had other assets. He owned a condominium jointly with his current companion, but quit-claimed his interest to her in 1993. He also owned life insurance on his life with a significant cash value. The cash value was used to pay the $11,000.00 premiums until the sum was exhausted, and the policies then lapsed. The husband was issued a 1099 for approximately $140,000.00 in 1995 for the sums he liquidated from the policies to pay the premiums on them. This sum was a marital asset, and although it does not all appear to have gone directly into his pocket, it would have been available for marital expenses other than the payment of premiums on life insurance policies.
The husband exhibited no credibility in the evidence he presented regarding his current income. The corporate tax returns for RDK Associates, Inc. show gross receipts of $207,333.00 to $253,417.00 between 1995 and 1997, and gross profits of between $85,627.00 and $132,398.00 during the same period. However, the husband reported a loss of $10,704.00 in 1997. On his financial affidavit, he shows income of $229.00 per week, or $11,908.00 per year. However, the restaurant business also pays certain of his personal expenses, including $200.00 per week he gives to his companion for their living expenses, $150.00 he pays to the wife as support, $230.00 per week to the West Hartford Credit Union, and his debt to Visa, GMAC, and American Airlines. The restaurant also pays his American Express bills.[4] According to Mr. DiPersio, he plans to continue in the restaurant business because "you make your living, and you eat good." The court finds that the husband realizes $900.00 per week from the restaurant, but that only $229.00 is income on which he pays either corporate or personal income taxes. He has a weekly net income, exclusive of the rental received from the East Hartford nightclub, of $862.00.
Based upon the evidence and findings, and upon the statutory criteria set forth in Sections 46b-62, 46b-81, 46b-82, and 46b-84
of the Connecticut General Statutes together with applicable case law, the court orders as follows.
1. The marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. The husband shall have the right to be covered under the wife's health insurance pursuant to COBRA for as long as he is permitted by law, at his expense. CT Page 5611
3. The husband shall pay to the wife the sum of $200.00 per week as periodic alimony until the death of either of them or her remarriage. Alimony shall be modifiable as to amount upon a substantial change in circumstances of either party or upon the husband's failure to indemnify the wife as set forth herein, but shall not be modifiable as to term.
4. The wife's title in and to the real property at Partridge Lane in Rocky Hill is confirmed. She will continue to pay the mortgage and taxes on that property.
5. The husband shall keep his business, including all stock in RDK Associates, Inc. and all assets of that corporation or the restaurant. He shall indemnify the wife and hold her harmless on account of any debts or liabilities of the corporation or the restaurant.
6. The husband shall indemnify the wife and hold her harmless on account of any liabilities for state or federal income taxes, sales taxes, or other taxes or fees incurred by him or any entity with which he was associated or in which he held an interest during the period from 1980 to 1999.
7. The husband shall maintain his existing life insurance naming the wife as the sole beneficiary during the time he is obligated to pay alimony.
8. The wife shall retain her property at Giant's Neck, East Lyme and in Polk County, Florida free of any claim by the husband, and shall indemnify and hold him harmless on account of any taxes or mortgages on the same.
9. Each party shall be responsible for the debts on their own financial affidavits (except as otherwise specifically provided herein), and shall hold the other harmless and indemnify him or her on account of those debts.
10. Roberto DiPersio shall hold title to four tenths of the two parcels of real property known as 639 Main Street, East Hartford, Connecticut as more fully described in a deed recorded in the land records of East Hartford in Volume 962 at Page 286 et seq.[5] Theresa DiPersio shall hold title to six tenths of the two parcels of real property known as 639 Main Street, East Hartford, Connecticut. They shall hold their interests as tenants CT Page 5612 in common and not as joint tenants. Each party shall execute whatever documents are necessary to accomplish and effectuate this order. The husband shall receive forty percent of any rental income and shall be responsible for forty percent of any expenses incurred in connection with said real property. The wife shall receive sixty percent of any income and shall be responsible for sixty percent of any expenses incurred in connection with said property. Neither party shall encumber, mortgage, or pledge his or her interest in the property without the express written permission of the other, and this provision shall be included in whatever deeds are prepared to accomplish this paragraph. If either party sells or otherwise transfers an interest in the property, whether voluntarily or involuntarily, such transfer shall be subject to the covenant not to encumber, mortgage or pledge set forth herein, which shall be binding on the transferee.
Judgment shall enter accordingly.
BY THE COURT,
GRUENDEL, J.